Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile: (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Barbara Nelson-Shedler*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Barbara Nelson-Shedler,<br><br>    Plaintiff,<br><br>    v.<br><br>The Prudential Insurance Company of America; Sprint Nextel Corporation; Sprint Nextel Corporation Disability Plan,<br><br>    Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Barbara Nelson-Shedler (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

*Jurisdiction*

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28

-1-

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. Plaintiff is a resident of Maricopa County, Arizona.

3. Upon information and belief, Sprint Nextel Corporation (hereinafter referred to as the "Company") sponsored, administered and purchased a group long term disability insurance policy which was fully insured by The Prudential Insurance Company of America (hereinafter referred to as "Prudential"). The specific Prudential group disability policy is known as Group Policy No.: 50678 (hereinafter referred to as the "Policy"). The Company's purpose in sponsoring, administering and purchasing the Prudential policy was to provide disability insurance for its employees. Upon information and belief, the Prudential policy may have been included in and part of an employee benefit plan, specifically named the Sprint Nextel Corporation Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, Prudential functioned as the claims administrator of the policy; however, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Prudential.

5. Upon information and belief, Plaintiff believes Prudential operated under a conflict of interest in evaluating her claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of

benefits; *to wit*, Prudential's conflict existed in that if it found Plaintiff was disabled, it was then liable for payment of her disability benefits.

    6.    The Company, Prudential and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

### *Venue*

    7.    Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

    8.    Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other employee benefits she may be entitled to as a result of being found disabled.

    9.    After working for the Company as a loyal employee, Plaintiff became disabled on or about March 8, 2012 due to serious medical conditions and was unable to work in her designated occupation as a Lead Retail Consultant. Plaintiff has remained disabled as that term is defined in the relevant policy continuously since that date and has not been able to return to any occupation as a result of her serious medical conditions.

    10.    Following her disability, Plaintiff applied for long term disability benefits under the relevant policy which was administered by Prudential, meaning it made the decision with regard to whether Plaintiff was disabled. Upon information and belief, the relevant Prudential policy and definition of disability governing Plaintiff's long term disability claim is as follows:

    You are disabled when Prudential determines that:

- You are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury, and
- You are under the regular care of a doctor, and
- You have a 40% or more loss in your monthly earnings due to that sickness or injury.

After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury:

- You are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience; and
- You are under the regular care of a doctor.

11. In support of her claim for long term disability benefits, Plaintiff submitted to Prudential, medical records from her treating physicians supporting her disability as defined by the relevant Prudential policy.

12. In a letter dated October 11, 2012, Prudential notified Plaintiff it was denying her claim for long term disability benefits.

13. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the October 11, 2012 denial of her long term disability claim and in support of her appeal, Plaintiff submitted additional medical documentation to Prudential.

14. As part of its review of Plaintiff's claim for long term disability benefits, Prudential obtained a medical records only, "paper review" of Plaintiff's claim from Gerard A. Malanga, M.D.

15. Upon information and belief, Plaintiff believes Dr. Malanga is a long time medical consultant for the disability insurance industry and Prudential. As a result, Plaintiff believes Dr. Malanga has an incentive to protect his own consulting relationships with the disability insurance industry and Prudential by providing medical records only peer reviews which selectively review or ignore evidence, such as occurred in Plaintiff's claim, in order

-4-

to provide opinions and report(s) which are favorable to insurance companies and which supported the denial of Plaintiff's long term disability claim.

16. In a letter dated November 29, 2012, Prudential again notified Plaintiff it was denying her claim for long term disability benefits.

17. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the November 29, 2012 denial of her long term disability claim and in support of her appeal, Plaintiff submitted additional medical, vocational and lay witness evidence demonstrating she met any definition of disability set forth in the relevant Prudential policy.

18. In support of her appeal, Plaintiff submitted to Prudential a narrative letter dated April 22, 2013 from her current treating board certified pain management physician who opined, "Given her age, her chronic medical conditions, and limited response to surgical cervical spine surgery, I conclude, with a reasonable degree of medical probability, [Plaintiff] will be unable to engage in any sustainable gainful employment indefinitely."

19. Plaintiff also submitted to Prudential a March 1, 2013 narrative letter authored by her current treating board certified orthopedic surgeon who opined, "…it is reasonable to assume that [Plaintiff] has been unable to work in any occupation since March 8, 2012."

20. Plaintiff also submitted to Prudential a Functional Capacity Evaluation report dated February 13, 2013 wherein after an extensive evaluation, a qualified physical therapist determined, "…my opinion is [Plaintiff] would not be able to perform <u>sedentary work</u> consistently on a regular, full-time or even part-time basis" (original emphasis).

21. Further supporting her appeal, Plaintiff submitted to Prudential a vocational report from a certified vocational expert dated May 20, 2013, who after reviewing Plaintiff's medical evidence and interviewing Plaintiff concluded, "…[Plaintiff] would not be able to fulfill the requirements of any occupation…"

22. In addition to the medical records and reports submitted to Prudential, Plaintiff submitted three (3) sworn affidavits from her husband, daughter and a longtime friend who all confirmed Plaintiff is unable to work in any occupation and that her medical condition has not improved in any way since her date of disability.

23. During the administrative review of Plaintiff's claim, she also applied for and received Social Security disability benefits through the Social Security Administration (hereinafter referred to as the "SSA").

24. The SSA found Plaintiff became disabled from engaging in any gainful occupation which may have existed in the national economy as of March 8, 2012. Plaintiff submitted to Prudential a copy of her July 21, 2013 Notice of Award from the Social Security Administration.

25. The SSA's definition of disability is more stringent and difficult to meet than the aforementioned definition of disability in the Prudential policy for the first 24 months of disability and substantially similar to the policy's definition of disability after the first 24 months of disability. Therefore, the SSA's approval of Plaintiff's claim is relevant evidence for this Court to consider with regard to the lawfulness of Prudential's decision to deny Plaintiff's benefits and in the process, not giving the SSA's decision appropriate weight in its determination of Plaintiff's claim.

26. As part of its review of Plaintiff's claim for long term disability benefits, Prudential obtained medical records only "paper reviews" of Plaintiff's claim from Victor Parisien, M.D. and Charles Brock, M.D.

27. Upon information and belief, Plaintiff believes Drs. Parisien and Brock are long time medical consultants for the disability insurance industry and Prudential. As a result, Plaintiff believes Drs. Parisien and Brock may have incentives to protect their own

consulting relationships with the disability insurance industry and Prudential by providing medical records only paper reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and which supported the denial of Plaintiff's claim.

28. In a letter dated August 28, 2013, in order to engage Prudential in a dialogue and so that she could perfect her claim, Plaintiff requested a complete copy of any and all medical records only "paper reviews" from Prudential and the opportunity to provide these reviews to her treating physicians for their response prior to Prudential rendering a final determination in her claim.

29. In a letter dated August 29, 2013, Prudential informed Plaintiff it was refusing to provide her with a copy of the reports authored by Drs. Parisien and Brock.

30. Prior to its final denial, Prudential never shared with Plaintiff or her treating physicians the reports authored by Drs. Parisien and Brock and never engaged Plaintiff or her treating physicians in a dialogue so they could either respond to Drs. Parisien and Brock's reports and/or perfect Plaintiff's claim.  Prudential's failure to provide Plaintiff and her treating physicians with the opportunity to respond to Drs. Parisien and Brock's reports precluded a full and fair review pursuant to ERISA and is a violation of Ninth Circuit case law.

31. In a letter dated September 13, 2013, Prudential again notified Plaintiff it had denied her claim for long term disability benefits under the policy.  In the letter, Prudential also notified Plaintiff she had exhausted her administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA.

32. In evaluating Plaintiff's claim on appeal, Prudential had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in her best interests and other participants" which it failed to do. [1]

33. Prudential failed to adequately investigate Plaintiff's case and failed to engage Plaintiff in a dialogue during the appeal of her claim with regard to what evidence was necessary so Plaintiff could perfect her appeal and claim. Prudential's failure to investigate the claim and to engage in this dialogue or to obtain the evidence it believed was important to perfect Plaintiff's claim is a violation of ERISA and Ninth Circuit case law and a reason she did not receive a full and fair review.

34. Plaintiff believes Prudential provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to credit Plaintiff's reliable evidence; failing to adequately investigate her claim; failing to have her examined by a medical professional when the policy allowed for an examination; providing one sided reviews of Plaintiff's claim that failed to consider all evidence submitted by her and/or de-emphasized medical evidence which supported Plaintiff's claim; disregarding Plaintiff's self-reported symptoms; failing to consider all the diagnoses and/or limitations set forth in her medical evidence as well as the impact the combination of those diagnoses and impairments would have on her ability to work; failing to engage Plaintiff in

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

a dialogue so she could submit the necessary evidence to perfect her claim and failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in any occupation.

35. Plaintiff further believes the reason Prudential provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to the dual roles Prudential undertook as decision maker and payor of benefits which created an inherent conflict of interest and this conflict may also be the reason the Company and/or Plan retained Prudential to insure and administer Plaintiff's disability claim.

36. Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of Prudential and any individual who reviewed her claim and the Court may properly weigh and consider evidence regarding the nature, extent and effect of any conflict of interest which may have impacted or influenced Prudential's decision to deny her claim.

37. With regard to whether Plaintiff meets the definition of disability set forth in the policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even if the Court concludes the policy confers discretion, the unlawful violations of ERISA committed by Prudential as referenced herein are so flagrant they justify *de novo* review.

38. As a direct result of Prudential's decision to deny Plaintiff's disability claim, she has been injured and suffered damages in the form of lost disability benefits, in addition to other potential employee benefits she may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled. Plaintiff believes other potential employee benefits may include but not be limited to, health and other insurance related coverage or benefits, retirement benefits or a pension, life insurance coverage and/or

1  the waiver of the premium on a life insurance policy providing coverage for her and her family/dependents.

39.     As referenced *infra*, the evidence submitted by Plaintiff in her case proves she meets any occupation of disability set forth in the relevant Prudential policy; specifically, the own and any occupation definitions of disability. Therefore, Plaintiff seeks a determination in this litigation that she meets both of the definitions of disability set forth in the Prudential policy, notwithstanding the fact that Prudential never made a determination regarding whether Plaintiff met the any occupation definition of disability in the policy.

40.     Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

41.     Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A.     For an Order that Plaintiff is entitled to long term disability benefits and that she meets both the own and any occupation definitions of disability set forth in the Prudential policy;

B.     For an Order requiring Defendants to pay Plaintiff her disability benefits and any other employee benefits she may be entitled to as a result of being found disabled pursuant to the Prudential policy, from the date she was first denied these benefits through the date of judgment and prejudgment interest thereon;

C.     For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time as she meets the conditions for termination of benefits;

1        D.      For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

      E.      For such other and further relief as the Court deems just and proper.

DATED this 15th day of January, 2014.

SCOTT E. DAVIS. P.C.

By:   */s/ Scott E. Davis*
        Scott E. Davis
        Attorney for Plaintiff